***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Garner. The appealing party has shown good grounds to reconsider the evidence; accordingly, the Full Commission hereby REVERSES the deputy commissioner's decision and enters the following opinion and award.
 ***********
The Full Commission finds as facts and concludes as a matter of law the following, which were entered into by the parties in a pretrial agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. The employer-employee relationship existed between the decedent and the defendant-employer at all relevant times.
3. The carrier on the risk was ITT Specialty Risk Services.
4. The plaintiff is alleging an occupational disease that resulted in the death of the decedent on December 2, 1999. The defendant-employer has denied liability in this case.
5. The issues to be determined by the Full Commission are: (1) whether decedent suffered from a compensable occupational disease, and if so, what are the compensable consequences, and (2) is counsel for plaintiff entitled to attorney's fees pursuant to N.C.G.S. § 97-88.1.
6. The depositions of Thomas D'Amico, M.D. and B. Allen Mosby, Jr. are a part of the evidentiary record in this matter.
 ***********
Based on the credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACTS
1. The deceased employee, Paul Lackey, (hereinafter referred to as "Decedent") was Lead Worker/Supervisor in the shipping department of defendant-employer's Mail Order Service Plant formerly located on Lawndale Avenue in Greensboro, North Carolina from 1962 until the spring of 1992. Decedent's job involved packing materials for shipment to customers.
2. Decedent's wife, Mrs. Frances S. Lackey, has duly qualified as executrix of Mr. Lackey's estate and has been substituted as plaintiff in this action.
3. ITT Specialty Risk Services provided the workers' compensation insurance coverage for defendant-employer from September 1, 1986, through January 1, 1993. Prior to that time, defendant-employer was self-insured.
4. Mr. James White worked for defendant-employer as a General Building Maintenance Worker from April 1971-July 1991. Mr. White's employment duties included repairing and maintaining anything under the roof of the building which included the shipping area in which decedent worked. Mr. White testified that he was often required to repair pipes in the shipping area, and to do so, he had to remove and replace pipe insulation. Mr. White testified that his work was very dusty because when removing pipe covering and insulation dust fibers would become airborne and everyone in the shipping department would be exposed to the dust, including decedent, on an almost daily basis due to the age of the building.
5. Mr. Bruce Mosby, Industrial Hygiene Inspector for the State of North Carolina, inspected defendant-employer's facility on two occasions, September 17, 1997 and November 5, 1997. Mr. Mosby's visits were routine inspections of defendant-employer's plant site pursuant to permits received from the state by asbestos removal contractor, Demolition Asbestos Removal, Inc. The asbestos removal permit stated that asbestos containing floor tile, cementitious wallboard, pipe insulation, boiler insulation and other materials were slated to be removed throughout the facility which would include the shipping department where plaintiff worked.
6. Mr. Mosby prepared a report detailing his September 17, 1997 visit to defendant-employer's facility. As reflected in his report, Mr. Mosby testified that on this date the asbestos removal contractor was in the process of preparing areas where asbestos was to be removed and that he observed on site asbestos containing materials including air cell, block insulation, floor tiles, and cementitious wallboard.
7. Mr. Mosby also prepared a report detailing his November 5, 1997 visit to defendant-employer's facility. On this date, asbestos removal work had been completed, the contractor was awaiting final inspection of the work, and the building was being prepared for demolition.
8. On April 16, 1999, decedent was diagnosed with mesothelioma by Dr. John D. Patrick. Dr. Thomas D'Amico, cardiothoracic surgeon/oncologist at Duke University Medical Center, examined decedent on June 10, 1999. Dr. D'Amico testified that as of this date and henceforth decedent would have been unable to work in any capacity.
9. Dr. D'Amico determined that decedent had contracted mesothelioma as the result of exposure to asbestos and that mesothelioma resulted in decedent's death on December 2, 1999.
10. Due to his asbestosis and resulting mesothelioma, decedent did not work in any capacity for any employer after June 10, 1999.
11. Throughout decedent's thirty (30) years employment with defendant-employer, decedent was injuriously exposed to asbestos and asbestos dust in defendant-employer's plant, specifically in the shipping area where he worked.
12. During the time that decedent was employed by defendant-employer, he was injuriously exposed to the hazards of asbestos in excess of thirty (30) working days, or parts thereof, within seven consecutive months.
13. Decedent's employment with defendant-employer placed him at an increased risk of developing asbestosis as opposed to the public generally.
14. Decedent has contracted asbestosis, a scheduled occupational disease, as a result of his occupational exposure to asbestos.
15. There is insufficient evidence in the record upon which to make a finding that decedent was exposed to the hazards of asbestos subsequent to his employment with defendant-employer.
16. Decedent was last injuriously exposed to the hazards of asbestos which resulted in mesothelioma while employed by defendant-employer.
17. Decedent contracted mesothelioma, an occupational disease, as a result of his occupational exposure to asbestos.
18. Decedent's contraction of asbestosis and later development of mesothelioma was due to causes and conditions characteristic of and peculiar to his particular employment with defendant-employer. Asbestosis and mesothelioma are not ordinary diseases of life to which the general public is equally exposed outside of decedent's employment.
19. After decedent's first diagnosis of asbestosis and mesothelioma, decedent timely filed his claims.
20. The only information in the evidentiary record regarding decedent's wages are two W-2 wage statements. This information is insufficient to calculate decedent's average weekly wage and resulting compensation rate pursuant to N.C.G.S. § 97-2(5).
 ***********
Based upon the Findings of Facts, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Decedent's claims for compensation as a result of his contraction of asbestosis and mesothelioma were timely filed. N.C.G.S. § 97-58.
2. Decedent was last injuriously exposed to the hazards of asbestos which resulted in mesothelioma while employed by defendant-employer for as much as thirty (30) days, or parts thereof, within seven consecutive calendar months immediately preceding his last exposure in 1992. N.C.G.S. § 97-57.
3. As a direct and natural result of his occupational exposure to asbestos while working for defendant-employer, decedent developed asbestosis and mesothelioma due to causes and conditions characteristic of and peculiar to his employment. Mesothelioma is not an ordinary disease of life to which the general public is equally exposed. N.C.G.S. § 97-53(13).
4. As a result of decedent's asbestosis and mesothelioma, Mrs. Frances Lackey, plaintiff and executrix of decedent's estate, is entitled to be paid by defendant-carrier ITT Specialty Risk Services temporary total disability compensation for the period of June 10, 1999 through December 2, 1999. N.C.G.S. § 97-29.
5. As a result of decedent's asbestosis, mesothelioma, and related death, Mrs. Frances Lackey, plaintiff and executrix of decedent's estate, is entitled to be paid by defendant-carrier ITT Specialty Risk Services burial expenses not to exceed $2,000.00. N.C.G.S. § 97-38
6. Plaintiff, Mrs. Frances Lackey, is the widow of decedent and as such is conclusively presumed to have been wholly dependent upon him at the time of his death.
N.C.G.S. § 97-39. As the sole dependent, plaintiff is entitled to receive benefits at the exclusion of all other persons. N.C.G.S. §97-38. Accordingly, plaintiff is entitled to receive benefits for a period of four hundred (400) weeks from the date of decedent's death. N.C.G.S. § 97-38.
7. Decedent's estate is entitled to have defendant-carrier ITT Specialty Risk Services pay for all medical expenses incurred due to his asbestosis and resulting mesothelioma. N.C.G.S. § 97-25.
8. Plaintiff is not entitled to attorney's fees since this defense was not unreasonable pursuant to the provisions of N.C.G.S. § 97-88.1.
9. Inadequate information to calculate decedent's average weekly wage is not included in the evidentiary record at this time; therefore, the Full Commission reserves the issue of calculation of decedent's average weekly wage and resulting compensation rate until such time as appropriate evidence is submitted to the Full Commission. N.C.G.S. §97-2(5)
 ***********
Based on the foregoing Findings of Facts and Conclusions of Law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant-carrier ITT Specialty Risk Services shall pay temporary total disability compensation to Mrs. Frances Lackey as plaintiff and executrix of decedent's estate from June 10, 1999 through December 2, 1999 at a rate to be determined following the submission of additional evidence to the Full Commission. Having accrued, this compensation shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved herein.
2. Defendant-carrier ITT Specialty Risk Services shall pay to Mrs. Frances Lackey, as plaintiff and executrix of decedent's estate, burial expenses not to exceed $2,000.00.
3. Defendant-carrier ITT Specialty Risk Services shall pay Mrs. Frances Lackey, as the widow and dependent of decedent, benefits for a period of 400 weeks from the date of decedent's death at a rate to be determined following the submission of additional evidence to the Full Commission. Having accrued, this compensation shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved herein.
4. Defendant-carrier ITT Specialty Risk Services shall pay plaintiff's medical expenses incurred or to be incurred when bills for the same have been approved pursuant to procedures established by the Commission.
5. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. From the amounts having accrued, this fee shall be deducted from the amounts owed to plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
6. Defendant-carrier ITT Specialty Risk Services shall pay the costs.
 ***********
The Full Commission also enters the following:
 ORDER
1. Plaintiff is hereby ORDERED to submit to the Full Commission a Form 22, Statement of Days Worked and Earnings of Injured Employee, documenting decedent's wages during the last twelve (12) months of his employment with defendant-employer within thirty (30) days of receipt of this Opinion and Award.
This the ___ day of August 2002.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER